UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TJTM TECHNOLOGIES, LLC,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>GOOGLE LLC,<br><br>　　　　Defendant. | Case No. 24-cv-01232-TLT<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 19 |

Before the Court is Defendant Google LLC ("Google")'s motion to dismiss Plaintiff TJTM Technologies ("TJTM")'s patent infringement claim. Def.'s Mot. To Dismiss ("Mot."), ECF No. 19. Defendant claims that the asserted claims of Plaintiff-owned U.S. Patent No. 8,958,853 ("'853 Patent") are invalid under Section 101 of Title 35 of the United States Code ("Section 101") and that Plaintiff has not plead facts sufficient to support its allegations of indirect and willful infringement. *Id.* at 1. On August 13, 2024, the Court heard oral argument. *TJTM Technologies v. Google LLC*, No. 24-cv-01232 (N.D. Cal. Argued Aug. 13, 2024).

Having carefully considered the parties' briefs, oral arguments, relevant legal authority and for the reasons stated below the Court **GRANTS** the motion to dismiss with leave to amend.

**I.  BACKGROUND**

　**A.  Procedural Background**

On February 29, 2024, Plaintiff filed complaint asserting a single claim of patent infringement against Defendant. *See* Compl. On April 29, 2024, Defendant filed a pre-answer motion to dismiss for failure to state a claim. Mot. Plaintiff filed its Opposition to Defendant's motion to dismiss on May 13, 2024. ECF No. 25 ("Opp'n"). Defendant filed Reply in support of its motion to dismiss on May 20, 2024. ECF No. 26 ("Reply").

**B.     Factual Background**

Plaintiff is a California limited liability company with its principal place of business in San Mateo, California. Compl. ¶ 9. In 2010, in response to a proliferation of accidents caused by distracted driving, Plaintiff developed the "OFF MODE" driving application. *Id.* ¶ 15. "OFF MODE" application allows users to block telephone calls, text messages, and other notifications while driving, gives them the option of issuing automated replies to senders or callers informing them that the driver is temporarily unavailable, and then provides a log of missed communications when "OFF MODE" is turned off. *Id.* ¶ 4, 18. Users still receive incoming messages but without the distracting pop-up notifications, pings, dings, vibrations, or other sounds. *Id.* ¶ 18. In 2013, Plaintiff hired a software engineer to build the "OFF MODE" application for the Android platform and in May 2013, the application was released to the public on Google Play. *Id.* ¶ 5, 19, 20.

On June 14, 2013, Plaintiff filed a provisional patent application. *Id.* ¶ 22. On February 9, 2014, Plaintiff filed a non-provisional, continuation of patent application. *Id.* ¶ 23. On February 17, 2015, United States Patent No. 8,958,853 for "Mobile Device Inactive Mode and Inactive Mode Verification" was issued. *Id.* ¶ 24. The '853 Patent contains one independent claim (*i.e.*, claim 1) and eight dependent claims (*i.e.*, claims 2 to 9). *See* Ex. A at 12:35-65, 13:1-30.

Claim 1 of the '853 Patent states:

> 1. A mobile device, comprising:
>
>> a wireless communication module;
>>
>> a processor, controlling the wireless communication module; and
>>
>> a memory controlled by the processor, the memory including instructions that when executed by the processor cause the processor to perform the steps of:
>>
>>> providing a graphical user interface through which a user customizes one or more functions of the mobile device when placed in an inactive mode;
>>>
>>> receiving a user selection to automatically initiate the inactive mode in response to the pairing of the mobile device with a vehicle;
>>>
>>> receiving a user selection of an away message to use when the mobile device is in inactive mode;

2

> in response to the pairing of the mobile device and the vehicle, automatically initiating a process to place the mobile device in inactive mode;
>
> when the mobile device is in inactive mode, in response to receiving a communication from the wireless communication module, transmitting the user selected away message via the wireless module and suppressing one or more sound, visual, or vibration communication cues that would have accompanied the communication had the mobile device not been in inactive mode.

Ex. A at 12:35-61.

Defendant is a limited liability company organized under the laws of the State of Delaware with principal place of business in Mountain View, California. Compl. ¶ 10. Plaintiff alleges that after the filing date of the provisional patent application, Defendant began selling phones that contained "Driving Mode" feature in its messaging application. *Id.* ¶ 25. Plaintiff claims that "Driving Mode" causes the user's phone to stay silent and the screen to stay dark while the user is driving. *Id.* ¶ 25. If someone sends a message, the sender receives an automatic reply letting them know that the user is temporarily unavailable. *Id.* ¶ 25. The sender may type "urgent" to ensure that the user receives a notification. *Id.* ¶ 25. Because of these features, Plaintiff alleges that Defendant's "Driving Mode" feature for its phones mirrors or constitutes the equivalent of the elements comprising the '853 Patent. *Id.* ¶ 25.

Plaintiff further alleges that Defendant began selling phones containing an "Add Mode" feature which allows users to select do not disturb mode which automatically activates when connected to an automobile Bluetooth connection. *Id.* ¶ 26. Under do not disturb mode, users may cause their phones to stay silent while the user is driving, and to automatically send a selected message letting a sender know that the user is temporarily unavailable. *Id.* ¶ 26. Because of these features, Plaintiff alleges that Defendant's "Add Mode" feature for its phones mirrors or constitutes the equivalent of the elements comprising the '853 Patent. *Id.* ¶ 26.

Plaintiff alleges that Defendant knew of the '853 Patent when it released "Driving Mode" and "Add Mode", because Defendant removed the "OFF MODE" app from Google Play once Defendant had developed its own application for its phones. *Id.* ¶ 5. Plaintiff further alleges Defendant knew of the '853 Patent because the '853 Patent was challenged at the Patent Trial and

3

1  Appeal Board ("PTAB") by United Patents, Inc., a membership-based organization that Defendant
2  is allegedly a member of. *Id.* ¶ 30. Plaintiff alleges that Defendant learned of the '853 patent from
3  Unified Patents either at the time the proceeding was filed or after its unsuccessful conclusion. *Id.* ¶
4  33.

## II.  LEGAL STANDARD

### A.  Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004). When reviewing a motion to dismiss under Rule 12(b)(6), a court considers only the allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice. *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

### B.  Motion to Dismiss for Patent Eligibility Challenges Under 35 U.S.C. § 101

Patent eligibility under Section 101 is a threshold issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Although the inquiry may contain underlying issues of fact, patent eligibility is ultimately a question of law. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). Thus, the issue of patent eligibility under Section 101 may be resolved by way of a motion to dismiss. *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 765 (Fed. Cir. 2019). However, dismissal at this stage is appropriate "only when there are no factual allegations that, taken as true, prevent resolving the

4

1 eligibility question as a matter of law." *Id.* (quoting *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018)).

**III.   DISCUSSION**

    **A.   Patent Eligibility – Abstract Ideas Exception**

Defendant's motion to dismiss argues that the claims of the '853 Patent fall within the patent-ineligible "abstract ideas" exception to Section 101. Mot. 5-13, 18-19. Under Section 101, patent-eligible subject matter includes "any new or useful process, machine, manufacture, or composition of matter, or any new or useful improvement thereof." *Bilski*, 561 U.S. at 601 (quoting 35 U.S.C. § 101). However, Section 101 "contains an important implicit exception: [l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Alice*, 573 U.S. at 216 (quoting *Assoc. for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)).

To determine patent eligibility, the Supreme Court articulated a two-step analysis in *Mayo Collaborative Servs. v. Prometheus Lab'ys Inc.*, 566 U.S. 66 (2012) and further delineated in *Alice*, 573 U.S. at 217. In step one, the Court "determine[s] whether the claims at issue are directed to one of those patent-ineligible concepts." *Alice*, 571 U.S. at 217. This step focuses on "what the patent asserts to be the 'focus of the claimed advance over the prior art.'" *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019). If the claims are directed to a patent-ineligible concept, then moving to step two, the Court begins the "search for an 'inventive concept'—i.e., an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice*, 571 U.S. at 217-218 (quoting *Mayo*, 566 U.S. at 72-73).

Here, the Court applies the *Alice/Mayo* framework to the '853 Patent claims. Parties have not indicated in their briefing whether any claim is representative of all claims. While the '853 Patent contains a single independent claim—claim 1—the Federal Circuit has held that "a claim is not representative simply because it is an independent claim." *Berkheimer*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). Thus, this Court will conduct its own analysis to determine whether any claim is representative.

    **1.   Claim 1 of the '853 Patent Is Representative of All Claims**

5

The Court is not required to analyze each and every claim of the patent. *Alice*, 573 U.S. at 255-26 (conducting the *Alice*/*Mayo* analysis on one representative claim). The Court may conduct its own analysis and determine which claims are representative if "all the claims are substantially similar and linked to the same abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

Here, the Court finds that Claim 1 is representative of all the claims in the '853 Patent. Claim 1 of the '853 Patent describes a mobile device that allows the user to perform functions while the mobile device is in an inactive mode. Compl. ¶ 7. The functions include automatically initiating inactive mode when pairing with a vehicle, transmitting a user selected away message while in inactive mode, and suppressing one or more communications that would have accompanied received messages had the mobile device not been in inactive mode. Compl. ¶ 7-8.

Dependent claim 2 adds the concept of suppressing all notifications. Ex. A at 12:62-67, 13:1-3. Dependent claim 3 adds the concept of providing a notification of suppressed notification upon deactivating inactive mode. Ex. A at 13:3-8. Dependent claims 4 to 7 specify the types of received communications. Ex. A at 13:9-19. Dependent claims 8 and 9 add the concept of providing notification to a server that the mobile device is in or out of inactive mode. Ex. A at 13:20-31. The claims are fairly similar and perform the same process. Further, the Opp'n only analyzes claim 1 of the '853 Patent, never mentioning claims 2 to 9. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) ("Courts may treat a patent claim as representative of patent eligibility in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative."). Accordingly, the Court will treat claim 1 as representative of all asserted claims.

**2. Claim 1 of the '853 Patent Is Directed to an Abstract Idea**

Defendant argues that the '853 Patent "is directed to the abstract idea of screening notifications." Mot. 1. Defendant contends that the method of screening notifications described in the '853 Patent is a longstanding human activity such as an assistant screening the phone communications of an executive while the executive is not to be disturbed. Mot. 7. Plaintiff argues

6

1  that Defendant overgeneralizes the '853 Patent. Opp'n 5. Instead, Plaintiff asserts that the '853
2  Patent "is directed toward a method for preventing distracting driving." *Id.* at 5-6. The Court finds
3  that claim 1 of the '853 Patent is directed to a patent-ineligible abstract idea.

4        The Supreme Court and the Federal Circuit have not established a bright-line test separating
5  abstract ideas from concepts that are sufficiently concrete to eliminate further inquiry under the first
6  step of the *Alice*/*Mayo* framework. *See, e.g.*, *Alice*, 573 U.S. at 220. As a result, in evaluating
7  whether particular claims are directed to patent-ineligible abstract ideas, courts have generally begun
8  by "compar[ing] claims at issue to those claims already found to be directed to an abstract idea in
9  previous cases." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016).

10       While the Section 101 "analysis must focus on the language of the [a]sserted [c]laims
11 themselves, the specification may nonetheless be useful in illuminating whether the claims are
12 directed to the identified abstract idea." *ChargePoint*, 920 F.3d at 767 (internal citations and
13 quotations omitted). The "directed" to inquiry may look to the "specification to understand the
14 problem facing the inventor, and ultimately, what the patent describes as the invention." *Id.* (internal
15 quotations omitted). Here, the specification suggests that claim 1 is directed at the abstract idea of
16 screening communications. The specification describes the problem of drivers distracted by
17 incoming communications on their mobile devices. Ex. A at 1:22-28. It then proposes the broad
18 solution: "[b]y suppressing the communication [received,] distracted driving may be reduced." Ex.
19 A at 2:2-3. It continues to describe an inactive mode that will receive incoming communications,
20 suppress the communications, and when inactive mode is deactivated, release the communications.
21 Ex. A at 2:46-56, 3:49-52. The specification makes clear that the idea of the invention of the '853
22 Patent is the idea of screening the notifications of a mobile device while the user is driving. Although
23 this is not dispositive of the "directed to" inquiry, it suggests that the abstract idea of screening
24 notifications may indeed be the focus of the '853 Patent.

25       Turning to the plain language of claim 1, the Court agrees with Defendant that the '853
26 Patent is directed at the abstract idea of screening notifications. The method of mobile devices
27 pairing with vehicles to automatically enter inactive mode ultimately describes a method of
28 screening notifications. The steps in claim 1 of '853 describe deciding whether to screen

1    notifications, determining an away message, disabling the notification, and transmitting the away
2    message. Plaintiff is correct that describing claims at "a high level of abstraction and untethered
3    from the language of the claims all but ensures that the exceptions to [Section] 101 swallow the
4    rule." Opp'n 5 (citing *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016)).
5    However, looking to both specification and the plain language of the claim, the patent attempts to
6    solve the problem of distracted driving by directing the solution at the abstract idea of screening
7    notifications. The Court does not find that such a solution comes from describing claims at "a high
8    level of abstraction and untethered from the language of the claims." *Id.*

9        Plaintiff makes several arguments for the proposition that '853 Patent is directed at more
10   than the abstract idea of screening notifications. Plaintiff first points to the nature of the device—
11   the mobile phone. However, applying the abstract idea of screening notifications to a particular
12   technology field is insufficient to make the idea patentable. *See, e.g.*, *In re TLI Commc'ns LLC Pat.*
13   *Litig.*, 823 F.3d 607, 615 (Fed. Cir. 2016) ("[S]teps that generically spell out what it means to 'apply
14   it on a telephone network' also cannot confer patent eligibility.").

15       In oral argument, Plaintiff contends that while part of the solution that '853 Patent proposes
16   is screening notifications, another part of the solution is the method of pairing the mobile device to
17   the vehicle in order to automatically screen notifications. *TJTM Technologies v. Google LLC*, No.
18   24-cv-01232 (N.D. Cal. Argued Aug. 13, 2024). This part of the solution attempts to address users
19   who may forget to power down their device before driving to avoid distractions. As Defendant
20   addresses in the Mot. and Reply, "detecting the motion or state of a vehicle and taking a
21   corresponding action" has also been recognized as an abstract idea. *Atos, LLC v. Allstate Ins. Co.*,
22   No. 20-CV-06224, 2021 WL 6063963, at *9 (N.D. Ill. Dec. 22, 2021) (finding claims "directed to
23   the abstract idea of detecting the motion or state of a vehicle and taking a corresponding action" to
24   be patent-ineligible). Here, the method of pairing a mobile device to a vehicle in order to suppress
25   notifications on the mobile device is directed at a patent-ineligible abstract idea.

26       Plaintiff next cites to *DDR Holdings, LLC v. Hotels.com* to claim that "[t]he '853 patent is
27   plainly directed at a new and useful technique for dealing with distracted driving, a problem
28   specifically arising from cell phone technology." Opp'n 9 (cleaned up). However, the Court finds

*DDR Holding* to be distinguishable. In *DDR Holdings*, the Court found that the asserted claims to be patent-eligible because "they do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). Here, the technique for screening notifications is not a new technique or concept. Rather, as illustrated by Defendant's analogies in the Mot., screening notifications is a known concept from the from both the pre-mobile device and post-mobile device world. *See, e.g.*, Mot. 6-8 (analogizing to a servant screening communications for a king who wishes not to be disturbed or an assistant screening mobile device notifications for a CEO who wishes not to be disturbed).

Next, Plaintiff analogizes '853 Patent to the claims in *Thales Visionix Inc. v. US*. Opp'n 9. In *Thales Visionix*, the Court found the claims to be patent-eligible because "the claims are directed to systems and methods that use inertial sensors in a non-conventional manner to reduce errors in measuring the relative position and orientation of a moving object on a moving reference frame." *Thales Visionix Inc. v. US*, 850 F.3d 1343, 1348-49 (Fed. Cir. 2017). However, unlike the claims in *Thales Visionix*, claim 1 of '853 Patent recites expected and conventional steps to screening notifications.

The Court is similarly not persuaded that claim 1 of '853 Patent is similar to the claims in *McRO, Inc. v. Bandai Namco Games America Inc.*, 837 F.3d 1299 (Fed. Cir. 2016). In *McRO*, the Court found that claim 1 of the '576 Patent was not directed to an abstract idea because the automation went beyond organizing existing information into a new form. *Id.* at 1315. The claims "improved the technological process" by automating the creation of animations rather than using the computer to set animations in frames for further design fine tuning. *Id.* at 1314. Here, claim 1 of '853 describes a method of screening notifications by linking a mobile device with a vehicle. While this method does improve the users' experiences as they no longer need to power down their mobile device manually before driving, it is unclear how this method improves the underlying technology as the patent in *McRO* did.

Here, the Court finds *Thompson v. TCT Mobile, Inc.* to be instructive. No. CV 19-899-RGA-SRF, 2020 WL 1531333 (D. Del. Mar. 31, 2020). In *Thompson*, the Court looked to the specification

9

1    and the plain language of the representative claims to determine whether the patents were directed
2    at a patent-ineligible abstract idea. *Id.* at *5-*6. The patents in *Thompson* attempted to address the
3    problem of a cell phone user being disturbed by unimportant calls or messages at night. *Id.* at *5.
4    The patents created a method for a selectable Nighttime Mode that would suppress notification with
5    the exception of those from a contact that have been predetermined as important. *Id.* The Court
6    determined that the patents were directed to the abstract idea of screening communications. *Id.* at
7    *8.

8    The Court finds that claim 1 of the '853 Patent is more analogous to the claim described in
9    *Thompson*. Like the claim in *Thompson*, claim 1 of the '853 Patent attempts to solve the problem of
10   a distracted user by directing to the solution of screening notifications. The present case and
11   *Thompson* contain two distinctions. The minor distinction is the timing of the suppression of
12   notifications—*Thompson* is directed at screening notifications while the user is sleeping night and
13   claim 1 of the '853 Patent is directed at screening notifications while the user is driving. The Court
14   does not find this distinction to be meaningful. The greater distinction is the automatic suppression
15   of notification. In *Thompson*, users had to manually activate the suppression mode. *Id.* at 1-2. Here,
16   inactive mode automatically actives when the user's mobile device links to the user's vehicle.
17   However, this distinction also does not sway the Court. The Court has already noted that "detecting
18   the motion or state of a vehicle and taking a corresponding action" has been recognized as an abstract
19   idea. *Atos*, 2021 WL 6063963, at *9. Accordingly, the Court finds that claim 1 of the '853 Patent is
20   directed to a patent-ineligible abstract idea.

21                    **3.   Claim 1 of the '853 Patent Is Not an Inventive Concept**

22   Defendant argues that claim 1 of the '853 Patent does not contain an inventive concept
23   because "the asserted claim simply uses generic computer components arranged in a conventional
24   fashion." Mot. 17. Plaintiff argues that the inventive concept exists "because the claim elements
25   amount to significantly more than the alleged abstract matter." Opp'n 10. Accordingly, the Court
26   finds that claim 1 of the '853 Patent is not an inventive concept.

27   In step 2 of the *Alice*/*Mayo* inquiry, courts search for an inventive concept "sufficient to
28   ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible

10

1   concept] itself." *Alice*, 571 U.S. at 217-218 (quoting *Mayo*, 566 U.S. at 72-73) (internal quotations
2   omitted). The inventive concept "must be significantly more than the abstract idea itself," *BASCOM*
3   *Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016), "must be
4   more than well-understood, routine, conventional activity," *Affinity Labs of Texas, LLC v.*
5   *DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016), "and cannot simply be an instruction to
6   implement or apply the abstract idea on a computer." *BASCOM*, 827 F.3d at 1349. "If a claim's only
7   'inventive concept' is the application of an abstract idea using conventional and well-understood
8   techniques, the claim has not been transformed into a patent-eligible application of an abstract idea."
9   *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290-91 (Fed. Cir. 2018). However, the Federal
10  Circuit has held that a "non-conventional and non-generic arrangement of known, conventional
11  pieces" can amount to an inventive concept. *BASCOM*, 827 F.3d at 1350.

12  Defendant argues that each of the components recited in claim 1 of the '853 Patent is generic
13  and well-known. Mot. 15. Defendant further argues that the limitations directed to the "inactive
14  mode" itself are coextensive with the abstract idea of screening notifications. Mot. 16.

15  Plaintiff counters that claim 1 of '853 Patent contains an inventive concept because it solves
16  the problem of distracted drivers through unconventional methods and improvements in technology.
17  Plaintiff first argues that "one point of novelty was pairing the mobile device with the vehicle and
18  automatically putting it in inactive mode which suppresses the notifications of the communications."
19  Opp'n 10. However, this point of novelty is directed at the same abstract ideas discussed in step 1
20  of the *Alice*/*Mayo* framework. Pairing a mobile device with a vehicle to activate inactive is directed
21  at the abstract idea of "detecting the motion or state of a vehicle and taking a corresponding action."
22  *Atos*, 2021 WL 6063963, at *9. Activating inactive mode to suppress notifications is directed at the
23  abstract idea of screening notifications. As currently pleaded, the Compl. does not explain how claim
24  1 of the '853 Patent contains points of novelty more than the abstract concepts themselves. Thus,
25  the purported inventive concept is the same as its abstract concepts.

26  Plaintiff next argues that the claimed invention presents improvements to a particular
27  technical field. Opp'n 11. Plaintiff claims that "the mobile device and the vehicle operate in
28  conjunction to form a new machine that implements the specific technical methodology for

1  suppressing electronic communications during operation of the vehicle." *Id.* (internal quotation
2  omitted). However, as currently pleaded, the Compl. does not explain how claim 1 of the '853 Patent
3  results in an improved machine from a technical standpoint. Accordingly, the Court finds that claim
4  1 of the '853 Patent is not an inventive concept.

### B. Plaintiff's Indirect and Willful Infringement Claims

Defendant argues that "Plaintiff's cursory allegations regarding knowledge are insufficient to support allegations of indirect and willful infringement." Mot. 20. Because the Court finds that the '853 Patent is directed at patent-ineligible subject matter under the *Alice*/*Mayo* inquiry, the Court does not need to address this argument at this stage.

### C. Leave to Amend

Defendant argues that leave to amend would be futile because "Section 101 analysis focuses on the claims of the patent" and Plaintiff "cannot change what the patent claims say by amending the complaint." Reply 18. Plaintiff requests leave to amend be granted to allow Plaintiff to "replead specific technical facts, perhaps attaching a declaration of a technical expert to explain in greater detail why Claim 1 is not directed primarily toward an abstract idea" and to address "points of novelty" in step two of the *Alice*/*Mayo* inquiry. Opp'n 14-15.

Under Federal Rule of Civil Procedure 15(a)(2), a party may amend its pleadings with leave of the court. Fed. R. Civ. P. 15(a)(2). Courts "should freely give leave when justice so requires," and this policy is applied with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal citation omitted). The Supreme Court has outlined five factors in considering whether to grant leave to amend: (1) bad faith on the part of the movant, (2) undue delay by the movant, (3) repeated amendments by the movant, (4) undue prejudice to the nonmovant, and (5) futility of the proposed amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The party opposing amendment bears the burden of demonstrating why leave to amend should not be granted. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).

Here, the Court has not found bad faith, undue delay, or repeated amendments to be at issue in the instant matter. The Court also finds that granting Plaintiff leave to amend will not unduly prejudice Defendant. Finally, the Court finds that the request to amend has reached futility as to step

1 of the *Alice/Mayo* inquiry. However, the request to amend has not reached futility as to step 2 of the *Alice/Mayo* inquiry. Plaintiff may leave to amend its complaint to address the inventive concept in claim 1 of the '853 Patent. Accordingly, the Court **GRANTS** Plaintiff leave to amend its complaint.

## IV.  CONCLUSION

Plaintiff has not plausibly alleged enough facts to survive a motion to dismiss its cause of action for patent infringement because representative claim 1 of the '853 Patent is (1) directed to a patent-ineligible abstract idea and (2) is not an inventive concept. Accordingly, for the above reasons, Defendant's motion to dismiss is **GRANTED** with leave to amend to address the inventive concept in claim 1 of the '853 Patent.

Plaintiff may amend its complaint within **14 days** of this Order.

This Order terminates ECF No. 19.

**IT IS SO ORDERED.**

Dated: August 19, 2024

_____
TRINA L. THOMPSON
United States District Judge